IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM S. KILROY, JR. | § | |
| | § | |
| Appellant, | § | |
| VS. | § | CIVIL ACTION NO. H-06-4060 |
| | § | |
| T. LAYNG GUERRIERO, *et al*, | § | (ADV. PROC. NO. 06-3320) |
| | § | |
| Appellees. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

**I.      INTRODUCTION**

Now before the Court is William S. Kilroy, Jr.'s interlocutory appeal of the Bankruptcy Court's denial of his motion to dismiss one of the claims in the pending adversary proceeding. After considering the Bankruptcy Court's memorandum opinion, the parties' briefs, and the governing law, the Court affirms the decision below.

Kilroy filed a Chapter 7 petition on October 13, 2005. On April 6, 2005, the appellee T. Layng Guerriero filed a complaint objecting to discharge, which initiated this adversary proceeding.[1] The only claim at issue in this appeal is Guerriero's objection to discharge under 11 U.S.C. § 727(a)(5) (2000), which allows for denial of a discharge if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." The Bankruptcy Court determined that Guerriero sufficiently stated a claim for relief under § 727(a)(5), and Kilroy appeals that determination.

---

[1] Guerriero is joined in the adversary proceeding by W & L Insurance Holdings Company, L.L.C., a Delaware limited liability company. The plaintiffs and appellees are collectively referred to as "Guerriero" herein.

Because Kilroy is appealing the denial of a motion to dismiss, all relevant facts alleged in Guerriero's first amended complaint (Adversary Proc. No. 06-3320, Doc. No. 16) are assumed to be true. According to the complaint, Kilroy and Guerriero were involved in a number of business dealings and Guerriero had invested money in several ventures that Kilroy or his mother, Lora Jean Kilroy ("Ms. Kilroy"), controlled. The complaint alleges that Kilroy and Ms. Kilroy set out on a campaign of mismanagement and misappropriation, and that Guerriero unsuccessfully attempted to call them to account. In response, Guerriero was removed from the board of one of the companies the Kilroys controlled, and he was later fired from the same company.

At some point prior to June of 2003, and before Guerriero knew of the Kilroys' misdeeds, Kilroy obtained a personal loan from Southwest Bank ("SWB"). As security for this loan, SWB required Ms. Kilroy to execute a guaranty agreement. Kilroy and Ms. Kilroy asked Guerriero to pledge his interest in one of those ventures (Aegis Insurance Holdings Co., L.P., "Aegis") as security for Ms. Kilroy's guaranty agreement with SWB. Guerriero, who believed that the Kilroys were acting in the best interest of the common business ventures, agreed.

In October of 2005, Ms. Kilroy formed a company, Buffalo Funding, L.L.C., which purchased the SWB loan from Southwest Bank. Kilroy then defaulted on the loan, and Buffalo Funding foreclosed on Kilroy's collateral, which consisted of a substantial portion of his personal assets. Ms. Kilroy also "attempted to foreclose" against Guerriero's interest in Aegis, though he claims that she was unsuccessful because neither

SWB nor Buffalo Funding ever held Ms. Kilroy liable on her personal guaranty.[2] Guerriero further alleges that Ms. Kilroy's purchase of the SWB loan (through Buffalo Funding) and the subsequent foreclosure were part of a scheme to insulate Kilroy's assets from the claims of creditors. Kilroy filed for bankruptcy only two days after the questionable foreclosure.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court had original jurisdiction over this adversary proceeding under 28 U.S.C. § 1334 (2000). Guerriero's complaint objected to Kilroy's discharge, so the suit was within the Bankruptcy Court's core jurisdiction. § 157(b)(2)(I). The order denying Kilroy's motion to dismiss was interlocutory, but this Court granted Kilroy's motion for leave to appeal. § 158(a)(3). The Bankruptcy Court's legal conclusion is reviewed *de novo*.

Kilroy's motion to dismiss is governed by Federal Rule of Civil Procedure 12(b)(6). *See* Bankr. R. 7001(6); 7012(b). Under this familiar standard of review, all well-pleaded facts of the complaint are assumed to be true, and the motion can succeed only if the movant shows that the plaintiff could not prove any set of facts that would entitle him to relief.

## III. ANALYSIS AND DISCUSSION

Kilroy has not satisfied this difficult burden. He contends that a debtor cannot be denied a discharge under 11 U.S.C. § 727(a)(5) if the debtor reports that a substantial fraction of his pre-petition assets were foreclosed upon. He argues first that a foreclosure is not a "loss" within the meaning of that statute, and second that even if a foreclosure is a

---

[2] It is not clear from the complaint whether Ms. Kilroy purported to sell Guerriero's interest at a foreclosure sale, but Guerriero alleges that he was later denied the privileges and benefits associated with his interest in Aegis.

"loss," then reporting the foreclosure is a satisfactory explanation. However, Guerriero has pleaded facts that, if proven, could support a denial of a discharge under § 727(a)(5).

First, Guerriero has identified a "loss" of assets. The Bankruptcy Code does not define the term "loss," but in the context of § 727(a)(5), the term clearly means "the failure to maintain possession of a thing." *Black's Law Dictionary* 963 (8th ed. 2004). Kilroy argues that the Buffalo Funding foreclosure was not a loss because it was not a disappearance, shortage, or transfer of assets. This claim is suspect, because a foreclosure is a transfer and it results in a shortage of the assets foreclosed upon. But more importantly, § 727(a)(5) is not restricted to particular forms of asset deprivation or alienation. If a debtor possesses substantial assets prior to his bankruptcy, and at the time of filing he no longer possesses those assets, then his creditors and the Bankruptcy Court are entitled to a complete and honest explanation of what happened. Kilroy cannot avoid this obligation by classifying the foreclosure as something other than a loss. Guerriero alleged that Kilroy possessed or owned a number of substantial assets, possibly valued at $ 1,000,000 or more, in the days before he filed for bankruptcy protection. When he filed the petition, those assets were possessed or owned by Buffalo Funding or Ms. Kilroy. Thus, a loss has occurred and Kilroy must provide a satisfactory explanation.

Second, Kilroy is wrong when he asserts that he has explained this loss satisfactorily merely because he reported that Buffalo Funding foreclosed on the assets. An explanation is satisfactory if

> the court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation—he believes what the bankrupts say with reference to the disappearance or shortage. He is satisfied. He no longer wonders. He is contented.

*First Sav. Ass'n, Inc. v. Reed* (*In re Reed*), 700 F.2d 986, 993 (5th Cir. 1983) (quoting *Shapiro & Ornish v. Holliday* (*In re Shapiro & Ornish*), 37 F.2d 403, 406 (N.D. Tex. 1929)). Whether an answer is "satisfactory" is a question of fact for the Bankruptcy Court to determine. *Id.* at 992-93. If Guerriero presents evidence that the supposed "foreclosure" of Kilroy's assets was nothing more than a fraud and part of a larger scheme to deprive Guerriero and other creditors, then the Bankruptcy Court could lawfully require Kilroy to provide further explanation about the nature of and details surrounding Buffalo Funding's foreclosure. If Kilroy refused to provide any additional information, and the Bankruptcy Court found itself unsettled or unsatisfied about the completeness or correctness of his explanation, then Kilroy could be denied a discharge under § 727(a)(5).

Kilroy's reliance on *Cadle Co. v. Andrews* (*In re Andrews*), 98 Fed. App'x 290 (5th Cir. 2004), is misplaced. In *Andrews*, the Court of Appeals affirmed the Bankruptcy Court's decision to enter a discharge over the objections of creditors, including objections under § 727(a)(5). One of the "questionable financial decisions" that the creditors challenged "involved a loan from Laredo National Bank (LNB)." *Id.* at 292. Andrews, the debtor, owned stock in a corporation (WOAI) that held the development and royalty rights to a local Whataburger franchise. To avoid LNB's execution of a judgment based on a separate debt, Andrews agreed to pay LNB $6,607 per month and pledged his stock in WOAI as security. However, the franchise agreement between Whataburger and WOAI prohibited stock ownership by third-parties without Whataburger's approval. "In order to solve this problem, WOAI bought the LNB judgment against Andrews and foreclosed on Andrews' stock. As a result of the foreclosure, WOAI obtained all of Andrews' remaining shares in WOAI." *Id.* at 292-93.

Despite Andrews' creditors' protests that the circumstances surrounding the foreclosure did not adequately explain the loss of assets, the Bankruptcy Court granted a discharge and the Court of Appeals affirmed.  *Id.* at 296.  The appellate court based its decision on specific facts found by the Bankruptcy Court, including the purpose of WOAI's purchase of the LNB judgment, the "very logical" nature of the transaction, and that WOAI's foreclosure was no different than a foreclosure by LNB.  *Id.*  The Bankruptcy Court concluded that the foreclosure of the assets "was not a transfer and, if it were a transfer, that Andrews provided a satisfactory explanation."  *Id.*  The Court of Appeals held that "[t]his finding was based on evidence in the record and is not clearly erroneous."  *Id.*

There are at least three reasons why *Andrews* does not require reversal of the Bankruptcy Court's decision in the present case.  First, as an unpublished opinion, *Andrews* is not binding precedent.[3]  *See* 5th Cir. R. 47.5.4.  Second, the Court of Appeals was reviewing factual findings of the Bankruptcy Court under the clear error standard; here, Kilroy bears a much heavier burden.  Third, the Bankruptcy Court actually inquired into the purchase of the LNB judgment and the foreclosure of the debtor's assets, finding that it was logical and typical.  The Court of Appeals cited these facts in support of its decision to affirm.  In essence, *Andrews* cuts against Kilroy's argument that the mere disclosure of a foreclosure is always satisfactory under § 727(a)(5).

Kilroy has also cited a number of cases from other jurisdictions which, he contends, establish that § 727(a)(5) does not permit denial based on the substantive nature

---

[3] This disposes of Kilroy's argument that the foreclosure was not a "loss" because it was not a "transfer."  The Court of Appeals never endorsed the Bankruptcy Court's limited view of "loss," but even if it did, this Court would not be bound by that endorsement.  As explained previously, the obligation to explain extends to any loss of assets, and is not limited to "transfers."

of a transaction. However, the Bankruptcy Court did not suggest that it would deny Kilroy's discharge under § 727(a)(5) because the transaction itself was improper; the court held that the facts Guerriero alleged created a need for additional explanation. Section 727(a)(5) does not provide a remedy for fraudulent transactions (unlike other subsections of § 727), but it does provide a remedy for inadequate and unsatisfactory explanations. Guerriero's allegations, if proven, could certainly deprive the Bankruptcy Court of any confidence or satisfaction with the honesty or completeness of Kilroy's initial explanation. If that satisfaction is not restored, Kilroy's discharge can be denied.

### IV. CONCLUSION

After considering the Bankruptcy Court's opinion, its opinion denying reconsideration, the parties' briefs, and the applicable law, the Court has determined that the Bankruptcy Court's denial of Kilroy's motion to dismiss should be AFFIRMED.

It is so Ordered.

Signed this 15th day of May, 2007.

_____
Kenneth M. Hoyt
United States District Judge